IN THE UNITED STATES DISTRICT COURT

FOR THE SOUTHERN DISTRICT OF GEORGIA

AUGUSTA DIVISION

| | |
|---|---|
| GWENDALYN LEWIS, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) CV 121-150 |
| | ) |
| KILOLO KIJAKAZI, Acting Commissioner of Social Security Administration, | ) |
| | ) |
| Defendant. | ) |

**MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION**

Gwendalyn Lewis appeals the decision of the Acting Commissioner of Social Security ("the Commissioner") denying her application for Social Security Disability Insurance Benefits ("DIB") under the Social Security Act. Upon consideration of the briefs submitted by both parties, the record evidence, and the relevant statutory and case law, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

I.     BACKGROUND

Plaintiff applied for DIB on September 10, 2018, alleging a disability onset date of August 24, 2015. Tr. ("R.") 15, 247-48. Plaintiff was forty-three years old at her application date and forty-four years old at the time the Administrative Law Judge ("ALJ") issued the decision currently under consideration. R. 15. Plaintiff applied for benefits based on schizophrenia disorder, panic

attacks, depression, and high blood pressure. R. 273. Plaintiff completed school through the fifth grade only and previously worked as a housekeeper at a nursing home. R. 43, 274.

Plaintiff's application was initially denied and likewise denied upon reconsideration. R. 15, 120-132, 137-141. Plaintiff requested a hearing before an ALJ, and the ALJ held a hearing on November 9, 2020. R. 142-146, 83-98. At the telephonic hearing, the ALJ heard testimony from Plaintiff as well as from Robert Brabham, PhD, a Vocational Expert ("VE"). R. 84. On December 10, 2020, the ALJ issued an unfavorable decision. R. 12, 28.

Applying the sequential process required by 20 C.F.R. § 404.1520, the ALJ found:

1. The claimant last met the insured status requirements of the Social Security Act on December 31, 2016. The claimant did not engage in substantial gainful activity during the period from her alleged onset date of August 24, 2015 through her last date insured of December 31, 2016 (20 C.F.R. § 404.1571 *et seq.*).

2. Through the date last insured, the claimant had the following severe impairments: major depressive disorder; anxiety disorder; schizophrenia; obesity; and hypertension (20 C.F.R. § 404.1520(c)).

3. Through the date last insured, the claimant did not have an impairment or combination of impairments that met or medically equaled the severity of one of the listed impairments in 20 CFR Part 404, Subpart P, Appendix 1 (20 C.F.R. § 404.1520(d), 404.1525 and 404.1526).

4. After careful consideration of the entire record, the undersigned finds that, through the date last insured, the claimant had the residual functional capacity to perform light work as defined in 20 C.F.R. § 404.1567(b) except for the following limitations: frequent use of foot controls; frequent pushing or pulling of hand controls; frequent overhead reaching; frequent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing and stooping; occasional kneeling, crouching, and crawling; occasional exposure to extreme cold and extreme heat; frequent exposure to dust, odors, fumes, and pulmonary irritants; occasional exposure to vibration; no work at unprotected heights or near dangerous moving mechanical parts; no driving as a work requirement; only worksites with employee restroom facilities; simple, routine tasks and simple work-related decisions.

>     Occasional interaction with supervisors; occasional interaction with colleagues; and occasional interaction with the public; with interactions mostly simple and superficial and most work being relatively isolated in nature. Tolerance for few changes to the routine work setting in terms of work site, work shift, and general pool of colleagues, and these changes should be simple and mostly introduced gradually. Can maintain concentration, persistence, and pace for two hours at a time, but with an would be [sic] off-task five percent of the eight-hour workday in addition to regularly scheduled breaks to account for factors such as impact of mental health impairments and possible fatigue and pain; would be absent from work one day every three months to account for symptom exacerbations and necessary medical appointments. Through the date last insured, the claimant was unable to perform any past relevant work (20 CFR 404.1565).
>
> 5.  Through the date last insured, considering the claimant's age, education, work experience, and residual functional capacity, there were jobs that existed in significant numbers in the national economy that the claimant could have performed (20 C.F.R. § 404.1569 and § 404.1569(a)). The claimant was not under a disability, as defined in the Social Security Act, at any time from August 24, 2015, the alleged onset date, through December 31, 2016, the date last insured (20 C.F.R. § 404.1520(g)).

R. 18-28.

When the Appeals Council denied Plaintiff's request for review on July 19, 2021, (R. 1), the Commissioner's decision became "final" for the purpose of judicial review. 42 U.S.C. § 405(g). Plaintiff then filed this civil action requesting reversal or remand of that adverse decision. Plaintiff argues the ALJ's decision regarding Plaintiff's RFC was not explained properly pursuant to Social Security Ruling 96-8p. See Pl.'s Br., doc. no. 13, p. 15. Plaintiff additionally claims that the ALJ failed to explain his finding that Plaintiff's alleged intellectual disorder was not medically determinable. Id. at 20. The Commissioner maintains that the administrative decision is supported by substantial evidence and that Plaintiff failed to prove that the given RFC was inadequate, and the decision should therefore be affirmed. See Comm'r's Br., doc. no. 14, pp. 6, 13.

II.     STANDARD OF REVIEW

Judicial review of social security cases is narrow and limited to the following questions: (1) whether the Commissioner's findings are supported by substantial evidence, and (2) whether the Commissioner applied the correct legal standards.  Lewis v. Callahan, 125 F.3d 1436, 1439 (11th Cir. 1997).  When considering whether the Commissioner's decision is supported by substantial evidence, the reviewing court may not decide the facts anew, reweigh the evidence, or substitute its judgment for the Commissioner's.  Moore v. Barnhart, 405 F.3d 1208, 1211 (11th Cir. 2005); Cornelius v. Sullivan, 936 F.2d 1143, 1145 (11th Cir. 1991).  Notwithstanding this measure of deference, the Court remains obligated to scrutinize the whole record to determine whether substantial evidence supports each essential administrative finding.  Bloodsworth v. Heckler, 703 F.2d 1233, 1239 (11th Cir. 1983).

The Commissioner's factual findings should be affirmed if there is substantial evidence to support them.  Barron v. Sullivan, 924 F.2d 227, 230 (11th Cir. 1991).  Substantial evidence is "more than a scintilla, but less than a preponderance: '[i]t is such relevant evidence as a reasonable person would accept as adequate to support a conclusion.'"  Martin v. Sullivan, 894 F.2d 1520, 1529 (11th Cir. 1990) (quoting Bloodsworth, 703 F.2d at 1239).  If the Court finds substantial evidence exists to support the Commissioner's factual findings, it must uphold the Commissioner even if the evidence preponderates in favor of the claimant.  Crawford v. Comm'r of Soc. Sec., 363 F.3d 1155, 1158-59 (11th Cir. 2004).  Finally, the Commissioner's findings of fact must be grounded in the entire record; a decision that focuses on one aspect of the evidence and disregards other contrary evidence is not based upon substantial evidence.  McCruter v. Bowen, 791 F.2d 1544, 1548 (11th Cir. 1986).

The deference accorded the Commissioner's findings of fact does not extend to his conclusions of law, which enjoy no presumption of validity.  Brown v. Sullivan, 921 F.2d 1233, 1236 (11th Cir. 1991) (holding that judicial review of the Commissioner's legal conclusions are not subject to the substantial evidence standard).  If the Commissioner fails either to apply correct legal standards or to provide the reviewing court with the means to determine whether correct legal standards were in fact applied, the Court must reverse the decision.  Wiggins v. Schweiker, 679 F.2d 1387, 1389 (11th Cir. 1982).

### III.    DISCUSSION

#### A.    The ALJ Properly Evaluated Plaintiff's Severe Impairments at Step Two

At step two, the regulations instruct that a severe impairment is one which significantly limits one's ability to perform "basic work activities." 20 C.F.R. § 404.1522(a) ("An impairment or combination of impairments is not severe if it does not significantly limit your physical or mental ability to do basic work activities.").  Basic work activities involve "the abilities and aptitudes necessary to do most jobs." 20 C.F.R. § 404.1522(b).  Examples include:

1. Physical functions such as walking, standing, sitting, lifting, pushing, pulling, reaching, carrying, or handling;

2. Capacities for seeing, hearing, and speaking;

3. Understanding, carrying out, and remembering simple instructions;

4. Use of judgment;

5. Responding appropriately to supervision, co-workers and usual work situations; and

6. Dealing with changes in a routine work setting.

Id.

However, the severity test at step two of the sequential process is designed to screen out only groundless claims. Tuggerson-Brown v. Comm'r of Soc. Sec., 572 F. App'x 949, 950 (11th Cir. 2014) (*per curiam*). The severity test has been described "as a de minimis requirement which only screens out those applicants whose medical problems could 'not possibly' prevent them from working." Stratton v. Bowen, 827 F.2d 1447, 1452 & n.9 (11th Cir. 1987) (citation omitted). As the Eleventh Circuit has explained, "[s]tep two is a threshold inquiry" and "allows only claims based on the most trivial impairments to be rejected." McDaniel v. Bowen, 800 F.2d 1026, 1031 (11th Cir. 1986). If the ALJ finds at least one severe impairment, she proceeds to the third step of the analysis. Jamison v. Bowen, 814 F.2d 585, 588 (11th Cir. 1987); see also Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (citing Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984)) (holding ALJ must consider all claimant's impairments, severe and non-severe, in combination at step three and in assessing RFC). An ALJ is not required to find all severe impairments at step two. Tuggerson-Brown, 572 F. App'x at 950-51.

The ALJ determined Plaintiff's major depressive disorder, anxiety disorder, schizophrenia, obesity, and hypertension qualified as severe impairments. Plaintiff argues the ALJ should have also found Plaintiff suffers the severe impairment of intellectual disorder. The ALJ correctly found this impairment was not medically determinable. On May 21, 2015, Plaintiff sat for a psychological evaluation, conducted by R.A. Murray and analyzed by John C. Whitley, III, Ph.D. R. 560-65, 401. As part of the evaluation, Plaintiff obtained a full-scale IQ test score of 51.[1] However, Plaintiff also scored in the severe range of malingering, and her self-reports and symptomology validity were doubtful. R. 565. Dr. Whitley made a provisional diagnosis

---

[1] Full-scale IQ score of 70 or below may be evidence of a significantly subaverage general intellectual functioning. 20 C.F.R. § 404, subpt. P, app. 1, § 12.05B(1)(a).

of borderline intellectual functioning based on the IQ score of 51 but further opined that Plaintiff's poor effort on the IQ test, as well as her history of employment, indicated her functioning may be "closer to borderline intelligence." R. 565.

The only other direct evidence concerning Plaintiff's intellectual capabilities was a letter from the Jefferson County School System merely confirming that Plaintiff received special education services. No school records were available to establish the types of services rendered or the extent of Plaintiff's intellectual deficiencies. Given the dearth of information available concerning Plaintiff's performance at school, and compelling evidence of malingering during her IQ test, the ALJ's finding that an intellectual disorder could not be medically determined is well-founded.

Substantial evidence supported the ALJ's related finding that Plaintiff did not suffer from significant deficits in adaptive functioning, which can be established by a finding in a psychiatric review technique ("PRT") of an extreme limitation of one, or marked limitation of two, of the following areas of mental functioning:

    a. Understand, remember, or apply information;

    b. Interact with others;

    c. Concentrate, persist, or maintain pace; or

    d. Adapt or manage oneself.

20 C.F.R. § 404, subpt. P, app. 1, 12.05B(2).

In determining that Plaintiff demonstrated moderate limitations in these four areas, the ALJ cited Dr. Whitley's report summarizing Plaintiff's abilities, the opinions of state agency psychological consultants, who also opined no more than moderate limitations in these four

7

areas, and Plaintiff's own testimony and admissions. The ALJ also observed the record lacked evidence of specialized mental health or in-patient treatment suggesting greater limitations during the relevant timeframe. Thus, the ALJ's decision to find only moderate limitations in these four areas is supported by substantial evidence.

For all of these reasons, the ALJ correctly found there was no medically determinable severe impairment of an intellectual nature.

> **B.  The ALJ Did Not Err In Finding Plaintiff's RFC To Be a Limited Range of Light Work**
>
> **1.  Step Four Framework for Formulating Plaintiff's RFC**

At step four of the sequential process, the ALJ evaluates a claimant's RFC and ability to return to past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). RFC is defined in the regulations "as that which an individual is still able to do despite the limitations caused by his or her impairments." Phillips v. Barnhart, 357 F.3d 1232, 1238 (11th Cir. 2004) (citation omitted). Courts have described RFC as "a medical assessment of what the claimant can do in a work setting despite any mental, physical or environmental limitations caused by the claimant's impairments and related symptoms." Watkins v. Comm'r of Soc. Sec., 457 F. App'x 868, 870 n.5 (11th Cir. 2012) (*per curiam*). Limitations are divided into three categories: (1) exertional limitations that impact the ability to perform the strength demands of a job, i.e., sitting, standing, walking, lifting, carrying, pushing or pulling; (2) non-exertional limitations that impact the ability to meet non-strength job demands, i.e., tolerating dust and fumes, appropriately responding to supervision, co-workers and work pressure, and difficulty performing manipulative or postural functions of jobs; and (3) a combination of exertional and non-exertional limitations. Baker v. Comm'r of Soc. Sec., 384 F. App'x 893, 894 (11th Cir.

2010) (*per curiam*) (citing 20 C.F.R. § 404.1569a(b)-(d)).  When determining a claimant's RFC, the ALJ must consider "all the relevant medical and other evidence." Phillips, 357 F.3d at 1238.

That is, an ALJ must consider all of a claimant's impairments, severe and non-severe, in combination.  Heatly v. Comm'r of Soc. Sec., 382 F. App'x 823, 825 (11th Cir. 2010) (*per curiam*) (citing Bowen v. Heckler, 748 F.2d 629, 635 (11th Cir. 1984)); see also 20 C.F.R. § 404.1545(a)(2) ("If you have more than one impairment.  We will consider all of your medically determinable impairments of which we are aware, including your medically determinable impairments that are not 'severe,' . . . when we assess your residual functional capacity.").  As one of the Commissioner's policy interpretation rulings explains,

> In assessing RFC, the adjudicator must consider limitations and restrictions imposed by all of an individual's impairments, even those that are not "severe." While a "not severe" impairment(s) standing alone may not significantly limit an individual's ability to do basic work activities, it may--when considered with limitations or restrictions due to other impairments--be critical to the outcome of a claim.

Social Security Ruling ("SSR") 96-8p, 1996 WL 374184, at *5 (July 2, 1996).  That is, in combination with other limitations, a "not severe" impairment may prevent the return to past relevant work or narrow the range of other work that may still be available to a claimant.  Id.

### 2.     The RFC Determination Is Supported by Substantial Evidence

Plaintiff argues that, "[d]espite the substantial evidence demonstrating the severity and persistent nature of Lewis's mental impairments, the RFC findings merely limit her to simple, routine tasks, occasional interaction with others, few workplace changes, and two-hour intervals in which she could maintain concentration." Pl.'s Br., p. 18.  In formulating the RFC, the ALJ found Plaintiff could perform light work,

> except for the following limitations: frequent use of foot controls; frequent pushing or pulling of hand controls; frequent overhead reaching; frequent climbing of ramps and stairs; no climbing of ladders, ropes, or scaffolds; frequent balancing and stooping; occasional kneeling, crouching, and crawling; occasional exposure to extreme cold and extreme heat; frequent exposure to dust, odors, fumes, and pulmonary irritants; occasional exposure to vibration; no work at unprotected heights or near dangerous moving mechanical parts; no driving as a work requirement; only worksites with employee restroom facilities; simple, routine tasks and simple work-related decisions. Occasional interaction with supervisors; occasional interaction with colleagues; and occasional interaction with the public; with interactions mostly simple and superficial and most work being relatively isolated in nature. Tolerance for few changes to the routine work setting in terms of work site, work shift, and general pool of colleagues, and these changes should be simple and mostly introduced gradually. Can maintain concentration, persistence, and pace for two hours at a time, but with an would be [sic] off-task five percent of the eight-hour workday in addition to regularly scheduled breaks to account for factors such as impact of mental health impairments and possible fatigue and pain; would be absent from work one day every three months to account for symptom exacerbations and necessary medical appointments.

R. 21. The ALJ specifically considered all of Plaintiff's subjective symptoms, the extent to which the symptoms were supported by objective medical evidence and opinion evidence. R. 22.

"'[T]here is no rigid requirement that the ALJ specifically refer to every piece of evidence in [his] decision,' so long as the decision enables the reviewing court to conclude that the ALJ considered the claimant's medical condition as a whole." Lewen v. Comm'r of Soc. Sec., 605 F. App'x 967, 968 (11th Cir. 2015) (quoting Dyer, 395 F.3d at 1211); see also Cooper v. Comm'r of Soc. Sec., 521 F. App'x 803, 808-09 (11th Cir. 2013) ("the ALJ stated that he considered the record in its entirety, and he was not required to discuss every piece of evidence in denying her application for disability benefits").

Here, the ALJ addressed all of Plaintiff's conditions in formulating the RFC, and the RFC is supported by substantial evidence. Plaintiff argues the RFC contains an incorrect assessment in

relation to Plaintiff's time off task.  The ALJ considered the following:  (1) State agency consultants' prior finding of moderate limitations in the area of concentrating, persisting, or maintaining pace; (2) lack of mental health treatment or inpatient psychiatric treatment; (3) Plaintiff's statements that her symptoms worsened well after the date last insured; (4) Dr. Whitley's assessment of no difficulty concentrating, persisting, or maintaining pace and lack of indication Plaintiff would be off-task for any additional period of time; (5) Plaintiff's past ability to maintain a work schedule; (6) the lack of notable and contemporaneous complaints of difficulty in this area; (7) Plaintiff's ability to complete activities of daily living requiring notable degrees of concentration, persistence, and pace; and (8) the legitimate concern of Plaintiff malingering.  R. 20, 23-25.  The ALJ carefully reviewed the evidence available to him, his RFC determination is supported by substantial evidence, and the Court will not reweigh the evidence.  While taking Plaintiff's subjective complaints as true would require a more restrictive RFC, as so often is the case, the ALJ properly evaluated Plaintiff's complaints and fashioned an RFC based on the overall record, appropriately finding at times that Plaintiff's subjective complaints were belied by the objective medical evidence.

Plaintiff next argues "the RFC's limitation to simple, routine, repetitive tasks does not account for the moderate difficulties in concentration, persistence, and pace," because "an ALJ does not account 'for a claimant's limitations in concentration, persistence, and pace by restricting the hypothetical question to simple, routine tasks or unskilled work.'"  Pl.'s Br., pp. 18-19 (quoting Winschel v. Comm'r of Soc. Sec., 631 F. 3d 1176, 1180 (11th Cir. 2011)).  The RFC limits Plaintiff, in pertinent part, to:

> simple, routine tasks and simple work-related decisions. Occasional interaction with supervisors; occasional interaction with colleagues; and occasional

11

interaction with the public; with interactions mostly simple and superficial and most work being relatively isolated in nature. Tolerance for few changes to the routine work setting in terms of work site, work shift, and general pool of colleagues, and these changes should be simple and mostly introduced gradually. Can maintain concentration, persistence, and pace for two hours at a time, but with an would be [sic] off-task five percent of the eight-hour workday in addition to regularly scheduled breaks to account for factors such as impact of mental health impairments and possible fatigue and pain.

R. 21. This RFC is more than sufficient to account for Plaintiff's deficiencies in concentration, persistence, and pace. See, e.g., Kunz v. Comm'r of Soc. Sec., 539 F. App'x 996, 996 (11th Cir. 2014) (holding ALJ's finding that claimant "could only comprehend and perform simple routine tasks and interact with others occasionally" accounted for rating of moderate difficulties in concentration, persistence, or pace); Lee v. Comm'r, Soc. Sec. Admin., 551 F. App'x 539, 541 (11th Cir. 2014) (holding ALJ "implicitly accounted for Lee's limitations in concentration, persistence, and pace when he imposed a limitation of simple work"). For all of these reasons, the ALJ's RFC determination is supported by substantial evidence.

IV. **CONCLUSION**

For the reasons set forth above, the Court **REPORTS** and **RECOMMENDS** the Commissioner's final decision be **AFFIRMED**, this civil action be **CLOSED**, and a final judgment be **ENTERED** in favor of the Commissioner.

SO REPORTED and RECOMMENDED this 11th day of August, 2022, at Augusta, Georgia.

BRIAN K. EPPS
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF GEORGIA

12